IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MERRI LYNNE REDHEAD,          )
                              )
        Plaintiff,             )
                              )
    -vs-                      )        Civil Action No. 17-639
                              )
NANCY A. BERRYHILL,[1]         )
COMMISSIONER OF SOCIAL SECURITY, )
                              )
        Defendant.            )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Merri Lynne Redhead ("Redhead") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying her claim for a period of disability and disability insurance benefits ("DIB") as well as a claim for supplemental social security ("SSI"). She alleges a disability beginning on October 25, 2013. (R. 17) Following a hearing before an ALJ, during which time both Redhead and a vocational expert ("VE") testified, the ALJ denied her claim. Redhead appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [11] and [16].

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The

2

Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Redhead had not engaged in substantial gainful activity since October 25, 2013, the application date. (R. 20) At step two, the ALJ concluded that Redhead has the following severe impairments: degenerative disc disease, osteoarthrosis, and bone fractures. (R. 20) The ALJ referenced some other conditions such as mental health disorders, a history of chronic sinonasal inflammatory

3

disease, and bilateral plantar fasciitis, but found that they did not constitute "severe impairments." (R. 20-22)

At step three, the ALJ concluded that Redhead does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ considered Listing 1.04 (disorders of the spine). He determined that there was no evidence that Redhead's back disorders "cause compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by a neuro-anatomic distribution of pain with functional loss, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and / or positive straight-leg raising tests." (R. 22)

Prior to engaging in step four, the ALJ assessed Redhead's residual functional capacity ("RFC").[2] The ALJ found Redhead able to perform a range of sedentary work, with some restrictions. (R. 22-25)

At step four, the ALJ determined that Redhead is capable of performing past relevant work as a payroll clerk and data entry clerk. (R. 25) Consequently, benefits were denied and the ALJ did not continue with the analysis.

3. Mental Impairments and Residual Functional Capacity

Redhead argues that, in having found at Step Two[3] that she had mental impairments, the ALJ erred by failing to incorporate the limitations arising from those

---

[2] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

[3] In cases involving mental impairments, the Social Security Administration Regulations set forth a specific technique used at Step Two for determining whether the mental impairment is severe. 20 CF.R. § 404.1520a. Under this technique, if the ALJ determines that a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment, he then must assess the claimant's limitations in four functional

4

impairments into the RFC analysis at Step Four. Here, at the second step of the analysis the ALJ considered the "four broad functional areas set out in the disability regulations for evaluating mental disorders." (R. 22) Specifically, the ALJ concluded that Redhead had "mild limitations" in the areas of activities of daily living, social functioning, and concentration, persistence or pace. (R. 22) The ALJ found no evidence of episodes of decompensation. Consequently, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area," the ALJ determined that Redhead's mental impairments were non-severe. (R. 22)

I agree with Redhead that an ALJ must consider all impairments, whether severe or not, in assessing a claimant's residual functional capacity. *Kobulnicky v. Astrue*, Civ. No. 11-1349, 2013 WL 1290955, at * 7 (W.D. Pa. March 27, 2013) (stating that, even if substantial evidence supported the ALJ's Step Two finding that a claimant's mental impairments were non-severe, the ALJ is still "required to analyze what limitations her non-severe impairments cause in constructing his RFC finding.)"; *see also* 20 C.F.R. § 404.1545(a)(2). "[T]he RFC must consider all functional limitations, *including mild limitations* from impairments that the ALJ has previously determined to be non-severe."

---

areas to determine whether that impairment is "severe." *Id.* § 404.1520a(b). The four functional areas include: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c). If the ALJ rates the degree of the claimant's limitation in the first three functional areas as "none" or "mild" and as "none" in the fourth area, he generally will conclude that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). In his written decision, the ALJ must incorporate his pertinent findings and conclusions based on this technique, including a specific finding as to the degree of limitation in each of the four functional areas. *Id.* § 404.1520a(e). The key question when reviewing the ALJ's Step Two determination is not whether a claimant's impairments were in fact severe, but, rather, whether substantial evidence supports the ALJ's finding that those impairments were not severe.

5

*Zapata-Alvarez v. Colvin*, Civ. No. 14-2830, 2015 WL 5179477, at * 7 (E.D. Pa. Sept. 4, 2015) (emphasis added); *Curran v. Astrue*, Civ. No. 11-5894, 2012 WL 5494616, at * 5 (E.D. Pa. Nov. 13, 2012). Although a non-severe impairment alone "may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of the claim." S.S.R. 96-8p. The responsibility for deciding a claimant's RFC rests with the ALJ and is based on the entire record. 20 C.F.R. §§ 404.1545, 404.1546. In making an RFC assessment, the "ALJ must describe how the evidence supports his conclusion and explain why certain limitations are not accepted as consistent with the medical or other evidence." *Noah v. Astrue*, Civ. No. 12-091, 2013 WL 364235, at * 2 (W.D. Pa. Jan. 30, 2013) (*citing*, *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999). Here, the ALJ acknowledged as much. (R. 23) (stating that "[i]n making the residual functional capacity finding, the undersigned has considered *all symptoms* and the extent to which he can reasonably accept them as consistent with the objective medical evidence and other evidence….") (emphasis added).

Further, the assessment of mental impairments done at Step Four is qualitatively different than that done at Step Two. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [the] paragraph[] B [criteria]…." *Booker v. Colvin*, Civ. No. 14-4984, 2017 WL 914911, at * 6 (E.D. Pa. March 7, 2017), *citing*, SSR p6-8), 1996 WL 374184, at * 4 (S.S.A. July 2, 1996). As stated by the Third Circuit court:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRFT) requires

6

adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRFT.

*Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004), *citing*, SSR 96-8p.

The question before me then is whether the ALJ discharged this duty. After careful consideration, I find that the ALJ complied with this standard. First, it is clear that the ALJ understood the need to consider all limitations, regardless of level of severity. (R. 19) (stating, that "[i]n making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe.") *See also*, S.S.R. 96-8p, 1996 WL 374184, at * 5 (July 2, 1996) (stating that, in assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Second, it is clear that the ALJ considered again at Step Four the issue of what limitations Redhead's mental impairments imposed.

For instance, The ALJ referenced Nettleton's notation on October 1, 2015 that Redhead's "anxiety and depression symptoms markedly improved with SSRI therapy." (R. 25) The ALJ acknowledged that Redhead sees a psychotherapist and takes Celexa. (R. 24) Further, the ALJ noted that Celexa has "made a big difference," and that it causes no side effects. Finally, the ALJ points to correspondence in the record which Redhead recounts having an interview for a data entry position but being told that "her

7

schooling is not recent enough." (R. 428)[4] According to the ALJ, "[t]his is tantamount to admitting that she believes she could do that work and the factors she cites for not getting those jobs are not the medical-vocational ones recognized herein." (R. 25)

The ALJ also discusses some activities of daily living, finding her statements concerning the intensity, persistence, and limiting effects of her symptoms to be less than entirely credible. The ALJ found that Redhead "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, she vacuums and sweeps, loads and unloads the dishwasher, does crafts, knits and crochets, and sews, and attends church once weekly. She also goes grocery shopping, helps care for pets, and watches TV." (R. 24) Thus, it appears as though the ALJ was considering Redhead's depression and anxiety and any limitations arising therefrom in formulating the RFC.

Viewed in its totality, the ALJ's analysis, set forth above, taken together with his conclusion as Step Two that "the claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe," convinces me that the ALJ appropriately considered Redhead's mental impairments in fashioning the RFC assessment. To the extent that the ALJ omitted any restrictions in the RFC relating to depression and anxiety, the ALJ did so based upon a finding that any limitations associated with Redhead's depression and anxiety were minimal in nature. Consequently, I find that the ALJ incorporated into

---

[4] Redhead continues, writing that, "I also spoke with another possible prospect of employment with a medical office (thus my billing and coding course), and she told me when companies are looking for personnel they do not care about your school or courses taken the only thing they look at is your recent experience. Therefore, I cannot get a job in the clerical field even with all my experiences in that field because of it not being recent enough." (R. 428)

8

the RFC assessment all the limitations that were credibly established by the evidence of record and that substantial evidence supports the assessment. See *Delio v. Comm'r. of Soc. Sec.*, Civ. No. 13-78-E, 2014 WL 4414830, at * 4 (W.D. Pa. Sept. 8, 2014) (rejecting claimant's contention that the ALJ failed to consider claimant's non-severe mental impairments in making the RFC).

    4.  <u>Medical Opinions</u>

Redhead urges that the ALJ did not comply with the "Treating Physician Rule," and failed to provide "good reasons" for discounting the treating physician's opinion. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id*, § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id*. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to

that opinion." *Id*, § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, 'where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, Civ. No. 10-2517, 2010 WL 5078238, at * 5 (3d Cir. Dec. 14, 2010).

The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d)(1), (3); *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions of disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation for his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially

pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Redhead's argument focuses upon the ALJ's treatment of the opinion proffered by Dr. Nettleton, Redhead's treating physician. Nettleton completed a Medical Source Statement on October 29, 2015. (R. 528-530) He indicates that he had been treating Redhead for approximately one year for a sacral fracture which results in chronic low back pain. (R. 528) Although Nettleton states that he has not prescribed any medication, records reveal that he did prescribe Celexa. (R. 522)[5] In assessing Redhead's functional limitations, Nettleton opined that she could sit for no more than two hours at a time and stand for no more than one hour at a time. (R. 528) He further notes that Redhead can stand / walk for about two hours total in an eight-hour workday, with normal breaks and can sit for about four hours total in an eight-hour workday, with breaks. (R. 529) According to Nettleton, Redhead requires a 10-15 minute break every one to two hours and will be off task more than 20% of the time. (R. 530) Further, he anticipates that she will be absent from work as a result of her impairments more than four days per month. (R. 530)

The ALJ declined to give Nettleton's opinion significant weight. (R. 25) The ALJ explained that Nettleton's opinion was not consistent with his own treatment notes or the rest of the record. (R. 25) He further stated that Nettleton is not a specialist, and that

---

[5] Redhead presented to Nettleton on August 20, 2015 for a yearly exam and complained of menopause syndrome, osteoporosis with pathological fracture, hyperparathyroidism, abnormal vaginal bleeding, depression, palpitations, and exertional dyspnea. Nettleton directed Redhead to start Celexa and gave her samples and noted that there should be a follow up for depression and anxiety in one month. (R. 522)

his highly restrictive limitations contrast with the fact that he did not prescribe Redhead any medications.[6] (R. 25) Redhead insists that this decision was erroneous.

I disagree. The ALJ's determination is consistent with the applicable regulations. The ALJ is not compelled to give a treating source's opinion more weight where that opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527, 416.927 (R. 25). A review of the record reveals that the ALJ considered the nature and extent of the treating relationship, specialization, consistency with the record as a whole, *et cetera*. 20 C.F.R. §§ 404.1527, 416.927, (R. 25). That the ALJ may have erred in finding Nettleton did not prescribe any medication is not persuasive. Nettleton himself indicating in his Medical Source Statement that he did not prescribe medication. Further, Nettleton's Medical Source Statement is based upon chronic low back pain. There is no indication that Nettleton ever prescribed a medication designed to address chronic low back pain or other physical impairments. Indeed, Redhead does not argue that the Celexa was prescribed for this purpose.

Further, ample record evidence supports the ALJ's conclusion that Nettleton's severe restrictions are at odds with Nettleton's own records and other medical evidence. For instance, despite Redhead's complaints of pain and Nettleton's severe restrictions, other than Celexa, Nettleton only prescribed vitamins. (R. 513, 517) Further, at her August 20, 2015 annual exam with Nettleton, Redhead denied suffering from any joint pain, muscle aches or stiffness. (R. 519) Rather, she complained of anxiety and mood changes. (R. 519)

---

[6] Again, as noted above, Nettleton did, in fact, prescribe Celexa.

Nettleton's findings are also at odds with other medical records. At two different examinations, Dr. Rothschild, a rheumatologist, simply prescribed Meloxicam to treat osteoarthritis and told Redhead to wear "supportive shoes with orthoses," "stretch and warm up prior to work," and engage in "quadriceps strengthening exercises." (R. 630, 693) Rothschild also found no tenderness, swelling, deformities, evidence of instability, weakness, atrophy, or alterations of tone upon examination and noted that the range of motion was full and painless in all planes. (R. 690) Redhead's muscle bulk appeared normal and no atrophy was noted. (R. 690) With respect to the thoracic spine in particular, Rothschild noted no deformities, no evidence of ankylosis, and a full painless arc of motion. (R. 691) With respect to the lumbosacral spine, Rothschild found normal curvatures, no percussion tenderness or tender trigger points, and again noted a full and painless arc of motion in all planes as well as negative straight leg tests. (R. 691) Additionally, state agency physician Dr. Sharon Wander found that Redhead's back and hip pain did cause some exertional and postural limitations, but that she was still able to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand and / or walk (with normal breaks) for a total of six hours in an eight-hour workday, and sit (with normal breaks) for a total of six hours in an eight-hour workday. (R. 190-191) The ALJ gave this opinion "partial weight," having found the opinion to be "balanced, objective, and generally consistent with the evidence of record as a whole." (R. 25)

Simply stated, I find that substantial evidence supports the ALJ's conclusions. Thus, there is no basis for remand.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MERRI LYNNE REDHEAD,　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　-vs-　　　　　　　　　　　　　　　　　)　　Civil Action No. 17-639
　　　　　　　　　　　　　　　　　　　　)
NANCY A. BERRYHILL,[7]　　　　　　　　)
COMMISSIONER OF SOCIAL SECURITY,　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　　)

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this day of April 23, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　/s/ Donetta W. Ambrose
　　　　　　　　　　　　　　　　Donetta W. Ambrose
　　　　　　　　　　　　　　　　United States Senior District Judge

---

[7] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.